IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

RUBY CAROL DIXON, a Minor,
by and Through Her Mother and
Next Friend, PAULA DIXON;
and PAULA DIXON, Individually                                          PLAINTIFFS

v.                                          CIVIL ACTION NO. 3:10-CV-00092-GHD-SAA

ALCORN COUNTY SCHOOL DISTRICT;
STACY D. SUGGS, in His Official Capacity
as Superintendent of Alcorn County Schools;
VAN CARPENTER, in His Official Capacity
as Principal of Kossuth Elementary School;
and TERESA WILBANKS, in Her Official Capacity                          DEFENDANTS

MEMORANDUM OPINION DENYING MOTION FOR SUMMARY JUDGMENT

Presently before the Court are Defendants' motion for summary judgment [62] and supplement [80] to the motion. Upon due consideration of the motion, response, rebuttal, supplement, exhibits, and supporting and opposing authority, the Court finds that the motion [62] and supplement [80] are not well taken and should be denied.

*A.     Factual and Procedural Background*

Plaintiffs Ruby Carol Dixon, by and through her mother and next friend, Paula Dixon, as well as Paula Dixon, individually ("Plaintiffs"), bring this suit against Defendants Alcorn County School District; Stacy D. Suggs, in his official capacity as superintendent of Alcorn County Schools; Van Carpenter, in his official capacity as principal of Kossuth Elementary School; and Teresa Wilbanks, in her official capacity ("Defendants") alleging a 42 U.S.C. § 1983 claim for violation of substantive due process rights under the Fourteenth Amendment to the United States

1

Constitution, as well as a state tort claim under the Mississippi Tort Claims Act (the "MTCA"). The incident giving rise to this suit was an assault on Plaintiff Ruby Carol Dixon by a fellow student "L.L." At the time of the incident, Plaintiff Ruby Carol Dixon was attending fourth grade at Kossuth Elementary School. It is undisputed that Defendant Alcorn County School District was acting under color of state law and through its superintendent and principal. It is also undisputed that Defendant Van Carpenter was the principal of Kossuth Elementary School and was in charge of discipline at the school.

Plaintiffs allege that prior to the alleged incident, "Defendant Van Carpenter had become aware of dangerous behavior, posing an imminent threat to other students, by a minor child, L.L," who had allegedly, "acted in an irrational, brutal fashion, both toward other students and teachers, and committed various assaults and intimidations against other students, and even cursed teachers." Pl.'s Compl. ¶10. Plaintiffs further allege that on the date of the incident, March 4, 2010, "Defendant Wilbanks had abandoned her duties and was not watching the minor child, L.L., . . . and Defendants Carpenter and Suggs had not adopted any policies to ensure that L.L. was not unsupervised with other children in the room." Id. ¶11. Plaintiffs allege Plaintiff Ruby Carol Dixon was assaulted by L.L. when he "[held her] head against the wall and violently rub[ed] a Clorox cleaning wipe into her eyes." Id. ¶12. Plaintiffs aver that "[t]he chemicals in the cleaning wipe left Plaintiff Ruby Carol Dixon in pain and caused immediate burning and redness in her eyes." Id. ¶12. Finally, Plaintiffs allege that Defendants Alcorn County School District, Van Carpenter, and Stacy D. Suggs "responded with willful indifference to the complaints about the assault." Id. ¶14. Plaintiffs allege that Defendants' conduct "infringe[d] upon the substantive due process clause of the Fourteenth Amendment to the United States Constitution," id. ¶16 and also constituted a violation of "substantive due process rights to be

free from arbitrary infliction of injury to her person under color of state law," *id.* at 1. Defendants have moved for summary judgment on Plaintiffs' claims.

### B. Summary Judgment Standard

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).

### C. Discussion

Defendants argue that summary judgment is proper on the following bases: (1) Plaintiffs cannot prevail on their substantive due process claim, because Alcorn County School District

3

had no obligation to provide a guarantee of protection against actions by a private actor because no "special relationship" existed in this case; and (2) Defendants are not liable on the state tort claims pursuant to Mississippi Code § 11-46-9. Plaintiffs contend that Defendants' motion for summary judgment should be denied because (1) Plaintiffs can prevail on their substantive due process claim; and (2) factual issues exist as to whether Defendants are liable pursuant to the MTCA. Defendants contend in their supplement [80] to the motion for summary judgment that they are immune from suit under the MTCA because Defendants performed a discretionary function, and that the inquiry ends there. First, the Court will address whether Defendants are immune from suit on Plaintiffs' state tort claims under the MTCA. Second, the Court will address whether a "special relationship" existed between the school and Plaintiff Ruby Carol Dixon such that Plaintiffs' Fourteenth Amendment substantive due process claims under 42 U.S.C. § 1983 can survive summary judgment.

*1. State Tort Claims Issue: Immunity under the Mississippi Tort Claims Act*

Defendants contend that they are immune from liability on Plaintiffs' state law tort claims under the MTCA. "Immunity afforded by the MTCA is a question of law properly addressed by summary judgment." *Green v. City of Moss Point, Miss.*, Civil Action No. 1:09-CV-638-HSO-JMR, 2010 WL 3713445, at *7 (S.D. Miss. Sept. 13, 2010); *see also Gilmore v. Fartheree*, Civil Action No.: 3:10-CV-00267-DPJ-FKB, 2011 WL 6026121, at *8 (S.D. Miss. Dec. 2, 2011). This Court takes note that "the MTCA's exemptions to Mississippi's waiver [from suit] should be liberally construed in favor of limiting liability." *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 306 (5th Cir. 2006) (quoting *In re Foust*, 310 F.3d 849, 864 (5th Cir. 2002) (citations omitted)). Defendant Alcorn County School District is a "political subdivision" and "governmental entity" under the MTCA. MISS. CODE ANN. § 11–46–1(g) & (i).

4

The legislative intent of the MTCA provides that the State of Mississippi and its political subdivisions "are not now, have never been and shall not be liable, and are . . . immune from suit" for their wrongful or tortious acts or omissions. MISS. CODE ANN. § 11-46-3. However, Defendants are subject to suit for claims arising out of the torts of governmental entities and their employees while acting within the course and scope of their employment. MISS. CODE ANN. § 11-46-5(1). Defendants claim that despite this provision, they remain immune from suit in this case because Defendants performed a discretionary, not ministerial, function, based on the following provision:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

MISS. CODE ANN. § 11-46-9(1)(d). The question before this Court is thus whether in the circumstances giving rise to this case, Defendants performed a discretionary function. If Defendants performed a discretionary function, Defendants would be immune from suit on Plaintiffs' state tort claims. If, instead, Defendants performed a ministerial function, this suit may be brought.

To determine whether a duty is discretionary, the Court must employ the two-part public-function test developed by the Mississippi Supreme Court: (1) Determine whether the act involved "an element of choice or judgment;" and (2) if so, determine "whether the choice involved social, economic, or political policy." *See Miss. Transp. Comm'n v. Montgomery*, No. 2010-IA-01112-SCT, 2011 WL 4634998, at *5-6 (Miss. Oct. 6, 2011) (holding that the public-function test is the determinative test of whether a governmental entity has performed a discretionary act; overruling cases which had applied the public-function test with an ordinary-

5

care standard in determining whether the governmental entity performed a discretionary act).; *see also Jones v. MDOT*, 744 So. 2d 256, 260 (¶ 10) (Miss. 1999) (citing *United States v. Gaubert*, 499 U.S. 315, 322, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991) in establishing the test)). In examining whether Defendants' conduct was discretionary, this Court looks not to Defendants' thought processes, but instead to the nature of the conduct in question. *See Strange ex rel. Strange v. Itawamba Cnty. Sch. Dist.*, 9 So. 3d 1187 (¶ 12) (Miss. Ct. App. 2009). Mississippi case law provides guidance.

In *Q.A., ex rel. D.W. v. Pearl Public School District*, No. 2010–CA–01610–COA, 2011 WL 5372291 (Miss. Ct. App. Nov. 8, 2011), the plaintiff claimed the school district was negligent in monitoring its parking lot after school hours and that its negligence resulted in the plaintiff's injuries from falling off the hood of another student's car and hitting his head on the asphalt. 2011 WL 5372291, at *3. The Mississippi Court of Appeals held the school district was immune from suit, because any duty the school district had to monitor its parking lot was discretionary; the court's reasoning was that "no Mississippi statute mandates that a school district monitor a parking lot more than an hour after school" and "no Mississippi statute requires that a school district assume that students leaving an after-school activity are behaving in a disorderly manner when there are no reports of such behavior." *Id.* Additionally, the court noted that "there is no evidence that [the school district] ignored reports that . . . students engaged in disorderly conduct . . . ." *Id.*; *see also Strange ex rel. Strange*, 9 So. 3d 1187 (¶ 9) (holding that school district allowing students to ride in the back of pick-up trucks was a discretionary act not subjecting it to suit and noting there was no statutory prohibition against it).

Alcorn County School District's conduct at issue involved a duty imposed by Mississippi law that "[school] superintendents, principals[,] and teachers shall hold the pupils to strict

6

account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess." MISS. CODE ANN. § 37–9–69. The Mississippi Supreme Court has stated, "This Court has applied this statute only in a limited context, mainly in cases concerning the disorderly conduct of students, or intentional acts on the parts of individuals . . . ." *Covington Cnty. Sch. Dist. v. Magee*, 29 So. 3d 1 (¶ 10) (Miss. 2010).[1]

In *Lang v. Bay St. Louis/Waveland School District*, 764 So. 2d 1234 (Miss. 1999), the Mississippi Supreme Court held that the school district had a ministerial duty to "hold students to strict account for disorderly conduct at school" when following a band concert, a student fell off a seven-foot wall while attempting to scramble off the wall to avoid a hostile altercation with other students when the school had reason to know of the danger. *See Q.A., ex rel. D.W.*, 2011 WL 5372291, at *5 (highlighting discrepancies between its holding of a discretionary duty and its holdings of ministerial duty in school immunity cases, including *Lang*).

This Court holds in this case that Defendants had a ministerial, not discretionary, duty to follow the mandates of Mississippi Code § 37-9-69, and that Defendants are thus not immune from suit on this ground. The MTCA states with respect to statutory duties that a political subdivision and its employees acting within the course of their employment are immune from any wrong "[a]rising out of any act of omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance, or regulation be valid." MISS. CODE ANN. § 11-46-9(1)(b). The Court finds that genuine disputes

---

[1] Plaintiffs and Defendants cite *L.W. v. McComb Separate Municipal School District*, 754 So. 2d 1136 (Miss. 1999), a school immunity case which since their briefs were submitted has been overruled by *Mississippi Transportation Commission v. Montgomery*, No. 2010-IA-01112-SCT, 2011 WL 4634998 (Miss. Oct 06, 2011). *Mississippi Transportation Commission* stated: "[T]o the extent *L.W.*, . . . may be read to condone an interplay between Section 11–46–9(1)(b) and Section 11–46–9(1)(d) to determine whether the discretionary conduct of the governmental entity is exempt from liability by applying the ordinary-care standard, these cases, and any other cases which stand for this proposition, are expressly overruled." 2011 WL 4634998, at *3.

of material fact exist with respect to this issue and thus denies summary judgment on Plaintiffs' state tort claims.

### 2. Section 1983 Claim Issue: Existence of "Special Relationship"

Next, the Court turns its attention to Defendants' second basis for its motion for summary judgment: its contention that Defendants are not liable on Plaintiffs' Section 1983 claims alleging deprivation of substantive due process under the Fourteenth Amendment because no "special relationship" existed between the school and Plaintiff Ruby Carol Dixon. In a Section 1983 claim, "a plaintiff must: (1) allege a violation of rights secured by the Constitution of the United States or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004) (internal citation omitted).

The parties do not dispute the existence of the second element. Thus, this Court will restrict its analysis to the first element. The Due Process Clause of the Fourteenth Amendment requires states to protect the life, liberty, and property of their citizens against invasion by the state—not by private actors. "As a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 197, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). However, when the State has a "special relationship" with a citizen, the pendulum shifts: the State has a duty to protect that citizen from private violence. *See Doe ex rel. Magee v. Covington County School Dist. ex rel. Bd. of Educ.*, 649 F.3d 335, 342 (5th Cir. 2011). Thus, for Plaintiffs' substantive due process claim under Section 1983 to prevail, a "special relationship" must be found to exist between the school district and student plaintiff. This special relationship would impose an obligation on Alcorn County School District

to guarantee protection from a private actor. A special relationship exists when the following situation is present:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the state by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs— e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.

*DeShaney*, 489 U.S. at 200–01, 109 S. Ct. 998 (footnotes and internal citations omitted).

Defendants contend that mandatory school attendance law itself does not create a special relationship between the school and the student. The Fifth Circuit has held that "compulsory-attendance schools (at least middle and upper schools) alone do not ipso facto have a special relationship with their students." *See Doe ex rel. Magee v. Covington County School Dist. ex rel. Bd. of Educ.*, 649 F.3d at 345 (emphasis in original). The Court notes the Fifth Circuit has held that a special relationship did not exist in various school cases. *See e.g.*, *Priester*, 354 F.3d at 422 (holding that "no special relationship exists between a school district and its students during a school-sponsored football practice held outside of the time during which students are required to attend school"); *Walton v. Alexander*, 44 F.3d 1297, 1305 (5th Cir. 1995) (holding that plaintiff who was student of state school for the deaf "was *not* in a special relationship with the school because he voluntarily attended the school for the deaf and thus chose to be placed in the restrictive custodial condition in which he was assaulted"); *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 530 (5th Cir. 1994) (allowing for the possibility that a student's being "compelled to

attend school during the day" might create a "special relationship" between the school and the student, but "any special relationship that may have existed lapsed when compulsory attendance ended," such as at an after-school activity).

However, the Fifth Circuit stated in *Covington County School District*: "We are satisfied that by itself [Platiniff]'s status as a nine-year-old girl attending a compulsory-attendance elementary school could distinguish the instant case from *Walton, Hillsboro* [*Doe v. Hillsboro Independent School District*, 113 F.3d 1412, 1416 (5th Cir. 1997) (en banc)], and our other school cases." 649 F.3d at 348. The Fifth Circuit explained in that *Covington County School District* that "a school could have a special relationship with a student "if he (1) is very young, (2) is physically restrained by (and unable to leave) the school's custody, and (3) is secluded or kept apart from teachers and other pupils who may witness and protest any instances of mistreatment." *Id.* at 344–45 (internal quotation marks omitted). The court held that a nine-year-old student was "very young," meeting the first prong. *Id.* at 345. Although the Fifth Circuit stopped short of holding that the school in that case had a special relationship with the student plaintiff based solely on her very young age, the court acknowledged in referring to its prior precedent where it had not found a school had a special relationship with a student, "[u]p until now, we have not been faced with a case involving (1) such a young girl (2) attending a public elementary school (3) under compulsory attendance laws." *Id.* In this case, this Court feels that it is confronted with that very situation.

Given that Plaintiff Ruby Carol Dixon was considered very young when the incidents giving rise to the suit occurred, as she was in the fourth grade; attending a public elementary school, Kossuth Elementary School; under compulsory attendance laws; and considering the other circumstances of the case, this Court is of the opinion that a "special relationship" existed

between the school district and Plaintiff Ruby Carol Dixon. Thus, Plaintiffs' substantive due process claim under Section 1983 survives summary judgment.

## D. Conclusion

In sum, the Court finds that genuine issues of material fact exist with respect to both the state tort claims and Section 1983 claims. Accordingly, Defendants have failed to show that they are entitled to judgment as a matter of law. Further, the Court may exercise its discretion to allow Plaintiffs' claims to proceed to trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("Neither do we suggest . . . that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.").

THEREFORE, it is ORDERED that Defendants' motion for summary judgment [62], as well as its corresponding supplement [80] to the motion for summary judgment, are DENIED. A separate order in accordance with this opinion shall issue this day.

It is SO ORDERED, this the 30th day of January, 2012.

_____
SENIOR JUDGE